sxb

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

**MAKUSHA GOZO**
**Plaintiff,**

1:20-cv-1754
Judge Andrea R. Wood
Magistrate Judge Jeffrey Cummings
PC 10

**vs.**

Case No:_____

**DEPARTMENT OF HOMELAND SECURITY; GEO GROUP INC.**
**WARDEN, FEDERAL BUREAU OF PRISONS et al; their respective**
**sucessors and assigns as their names may appear; respondeat superior**

**Defendants,**

## MOTION TO DELETE/RESCIND DETAINER

# RECEIVED

MAR 0 9 2020  EⱵ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# TABLE OF CONTENTS

Table of Authority.................................................................. i

Jurisdiction......................................................................... 2

Satement of Facts................................................................. 6

Argument Point One............................................................. 7

Argument Point Two............................................................. 11

Argument Point Three........................................................... 14

Summary........................................................................... 17

Relief Sought..................................................................... 19

Exhibit A......................................................................... 20 19

# TABLE OF AUTHORITY

1. Alvarado v. Litscher, 267 F.3d 648 (7th Cir. 2001)

2. Araujo v. United States, 301 F. Supp. 2d 1095

3. Ashcroft v. al-Kidd, 563 U.S. 731 (2011)

4. Au Yi Lau v. Immigration & Naturalization Serv., 445 F.2d 217 (D.C. Cir. 1971)

5. Braden v 30th Judicial Circuit Court, 410 US 484 (1973)

6. Carafas v LaVallee, 391 US 234, 239, 20 L Ed 2d 554, 88 S Ct 1556 (1968)

7. Cervantez v. Whitfield, 776 F.2d 556, 560

8. Davis v. Mississippi, 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969)

9. Dunaway v. New York, 442 U.S. 200, 216, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979)

10. Haines v. Kerner, 404 US 519 (1972)

11. Harris v. Nelson, 394 U.S. 286, 22 L. Ed. 2d 281, 89 S. Ct. 1082 (1969)

12. Hope v. Pelzer, 536 U.S. 730 (2002)

13. Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210 (1984)

14. Jones v. Cunningham, 371 US 236 (1963)

15. Malley v. Briggs, 475 U.S. 335, 344 n.7, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)

16. Manzanares v. Higdon, 575 F.3d 1135 (10th Cir. 2009)

17. Maryland v. Pringle, 540 U.S. 366, 373, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003)

18. Mississippi Publishing Corp. v. Murphree, 326 U.S. 438 (1946)

19. Monroe v. Pape, 365 U.S. 167 (1961));

20. Moreno v. Napolitano 213 F. Supp. 3d 999 (Northern District of Illinios 2016)

21. Mountain High Knitting, Inc. v. Reno, 51 F.3d 216 (9th Cir. 1995)

22. Nwankwo v Reno 819 F Supp 1186 (ED NY 1993)

(i)

23. <u>Nwankwo v Reno</u>  828 F Supp 171  (ED NY, 1993)

24. <u>Peyton v. Rowe</u>, 391 US 54 (1968)

25. <u>Presier v. Rodriguez</u>, 411 U.S. 475 (1973)

26. <u>Robinson Engineer Co. Pension Plan & Trust v. George</u>, 223 F.3d 445 (7th Cir. 2000)

27. <u>Robinson v. Penn Central Co</u>., 484 F.2d 553 (3d Cir. 1973)

28. <u>Terry v. Ohio</u>, 392 U.S. 1, 16-19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)

29. <u>United States v. Cantu</u>, 519 F.2d 494 (7th Cir. 1975)

30. <u>United States v. Quintana</u>, 623 F.3d 1237 (8th Cir. 2010)

31. <u>United States v. Place</u>, 462 U.S. 696, 709, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983)

32. <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873 (1975)

33. <u>Vargas v. Swan</u>, 854 F.2d 1028 (7th Cir. 1988)

34. <u>Walker v Wainwright</u>, 390 US 335, 19 L Ed 2d 1215, 88 S Ct 962 (1968)

35. <u>Ybarra v. Illinois</u>, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979)

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

**MAKUSHA GOZO**
       **Plaintiff,**

**vs.**                                    **Case No:**_____

**DEPARTMENT OF HOMELAND SECURITY; GEO GROUP INC.
WARDEN, FEDERAL BUREAU OF PRISONS et al; their respective
sucessors and assigns as their names may appear; respondeat superior**
                                                              **Defendants,**

## MOTION TO DELETE/RESCIND DETAINER

Comes now the Plaintiff, MAKUSHA GOZO, pro se pursuant to his Sixth Amendment
Right to proceed as pro se. The Plaintiff humbly defers to this Honorable Court to
construe this motion as it sees fit. Pro se motions are held to a lower standard that
motions filed by American Bar Association members, see Haines v. Kerner, 404 US 519,
520 (1972) and Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001).

The Plaintiff requests that this Honorable Court grant him leave to amend this motion as
the Court may see fit and he reserves all his rights. Inter alia, the Plaintiff brings his claims
under the Administrative Procedures Act 5 U.S.C. § 706(2)(C), as this is one of the
available avenues stated in Moreno v. Napolitano, 213 F. Supp. 3d 999, 1004 (Northern
District of Illinios 2016).

The Plaintiff wishes to introduce exhibits that have certain confidential information that is
not public, and thus requests this data be sealed.

1

# JURISDICTION

**1).** The Defendants' actions and decisions that caused the unlawful "detainer" to be issued against the Plaintiff were taken and executed via the governance of the Secretary of the Department of Homeland Security; the Department of Homeland Security's I.C.E. Director; the Warden and his employers for Geo Group Inc. where the Plaintiff is currently housed; the Geo Group Inc. and the Director of the Federal Bureau of Prisons (as they unlawfully profited for the Plaintiff's "detainer"); et al; all their respective sucessors and assigns as their names may appear for the purposes of respondeat superior application at their vicarious liability. Enclosed please find Exhibit A, successive unanswered episodes of correspondence to the Defendants, and a tort claim not answered in the time permitted by the Federal Tort Claims Act 28 USCS §1346 et seq., such that they are subject to default judgement, as a matter of law.

**2).** The Plaintiff was in this same Illinois jusdicial district during his Defendants' parole period, although not in custody. The corollary of his having been under the Defendants' parole is application of jurisdiction for this case under <u>Vargas v. Swan</u>, 854 F.2d 1028, 1030-1033 (7th Cir. 1988), where the combination of the "parole" and the "detainer" sufficiently restrain the Plaintiff "so as to constitute custody supporting Federal Habeas jurisdiction", see also <u>Peyton v. Rowe</u>, 391 US 54, 67 (1968); <u>Moreno v. Napolitano</u>, 213 F. Supp. 3d 999, 1000-1002 (Northern District of Illinios 2016) and <u>Braden v 30th Judicial Circuit Court</u>, 410 US 484, 488 (1973) as well as <u>Jones v. Cunningham</u>, 371 US 236, 242-244 (1963) et al.

**3).** In <u>Braden v 30th Judicial Circuit Court</u>, 410 US 484, 495 (1973) the Court stated "...the language of §2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction"."

**4).** Rule 4 of the Federal Rules of Civil Procedure that governs service of process for this case as indicated by the Court in <u>Mississippi Publishing Corp. v. Murphree</u>, 326 U.S. 438, 441-442 (1946) stating "By designating an agent to receive service of process and

2

consenting to be sued in the courts of the state, the corporation had consented to suit in the district court". The Defendants in this case conduct daily business and have resident agents (as required by state law) in this Honorable Court's jurisdiction so as to provide implied assent to service of process via US Postal mail, inter alia, as discussed by this same Mississippi Publishing Corp. Supreme Court opinion above.

**5).** The Defendants are thus "amenable to the jurisdiction of" an Illinois Federal Court as to the Plaintiff's federal claim as stated by the Court Robinson Engineering Co. Pension Plan & Trust v. George, 223 F.3d 445, 448-451 (7th Cir. 2000); where the Plaintiff's case Federal statutes similarly authorize extraterritorial service of process. See also Robinson v. Penn Central Co., 484 F.2d 553, 555-556 (3d Cir. 1973); and Nwankwo v Reno, 828 F Supp 171, 174-176 (ED NY, 1993).

The applicable statutes include, inter alia, 18 U.S.C. § 1965; where at

- 18 U.S.C. § 1965(d) ("All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.").

- This is addition to 15 U.S.C. § 77v(a) ("Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place . . . and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.");

- and also 15 U.S.C. § 78aa ("Any suit or action to enforce any liability or duty created by this chapter . . . may be brought in any such district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.").

**6).** The Plaintiff's I-247 "detainer" was served to him by pubicly traded corporation civilian contractors doing business as ("d/b/a") the Defendants, as both entities having Illinois resident agents conducting daily bussiness directly and indirectly in this Honorable Court's

judicial district, thus gaining profit from means which include tortious acts against the Plaintiff in violation of 15 USCS §§ 77a et seq.

**7).** Whereas the Court stated in <u>Moreno v. Napolitano,</u> 213 F. Supp. 3d 999, 1004 (Northern District of Illinios 2016) the same older I-247 "detainer" forms served to the Plaintiff by these Defendants' civilian contractors are unlawful since they go beyond the Defendants' statutory authority in violation of the ADA at 5 U.S.C. 706(2)(C). The Plaintiff will furnish the Court litigation documents regarding the Defendants' torts that are reciprocal to the unlawful "detainer" upon request, for example the enclosed tort claim.

**8).** The Defendants have moved the Plaintiff to four different judicial districts in less than fifteen months in an effort to avoid his litigation for the torts that they are continuing to commit. This Honorable Court is in a position to stop the Defendants from continuing to play "musical chairs" and or "diesel therapy" prison address change in order to essentially "run out the clock" on the statute of limitations for these torts and his F.B.O.P. sentence. The Court stated in <u>Nwankwo v Reno,</u> 819 F. Supp 1186, 1192 (ED NY 1993) "Because the facts are undisputed, the presence of petitioners is not required in the Eastern District of New York for a hearing. Accordingly, there is no reason to transfer the present cases." There is similarly no need for the Plaintiff to appear in person before this Honorable Court, since the facts are undisputed and thus no reason to transfer the Plaintiff's case elsewhere, vis-a-vis the Defendants' above-mentioned committed continuous effort to keep changing his judicial district to avoid his litigation, to wit, these same successive judicial district transfers would render any prospective Habeas Corpus relief unavailable, resulting in Constititional violations.

**9).** The Plaintiff therefore also has an injury-in-fact requirement enabling this Honorable Court to provide, inter alia, injunctive and declaratory relief, due to the ongoing, increasing suffering of injury that is concrete and particularized, as discussed hereinafter. <u>Nwankwo v Reno,</u> 828 F Supp 171, 176 (ED NY, 1993) the Court stated "In the opening part of his opinion in <u>Harris v. Nelson,</u> 394 U.S. 286, 22 L. Ed. 2d 281, 89 S. Ct. 1082 (1969) Justice Fortas wrote: "The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action.

4

Its preeminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended * * *." U.S.Const., Art. I, § 9, cl. 2. The scope and flexibility of the writ -- its capacity to reach all manner of illegal detention -- its ability to cut through barriers of form and procedural mazes -- have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected. 394 U.S. at 290-91.""

**10).** The Plaintiff wishes to humbly request the most expeditious relief available filing as a single Plaintiff since there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law, as explained hereinafter. However, a second option of lesser interest may be more expedient, since the Plaintiff here and the Plaintiffs in Moreno v. Napoliatano 213 F. Supp. 3d 999 (Northern District of Illinios 2016) have a common nucleus of operative fact between them in the Defendants' use of the same unlawful methodology of issuing "detainers" in a manner that violates the Constitution as enumerated in the followng Argument Points One, Two and Three. Therefore, the Plaintiff defers to the Court to consider him permission to join the class in this Moreno case, but only if it will bring an earlier relief resolution.

**11).** The Defendants have complete discretion over the duration of Plaintiffs' unlawful "detainer" and projected detention; and therefore the Plaintiff's claims. As a direct result of the Defendants' ongoing and increasing injurious misconduct, including torts committed directly and or directly via this judicial district, the Plaintiff continues to sufferred ever increasing irreparable harm, for which there is no adequate remedy at law.

**12)**. Henceforth the Court's urgent intervention, attention is humbly requested with all speed.

5

## STATEMENT OF FACTS

**1).** The Plaintiff entered the United States on August 22, 1992 on an F-1 student visa, pursuant to an academic scholarship.

**2).** As a proximate result of civil and political unrest, the Plaintiff as a known opponent of the incumbent Zimbabwe government was subsequently became stateless after losing this Zimbabwe citizenship. In 2004, the Plaintiff was convicted after trial on certain bussiness and commerce issues, after he himself was misled and misinformed. This is now he subject of a new trial and appeals.

**3).** The DHS was unabe to remove him because his conviction was not final for 8 U.S.C. purposes, and he was also now stateless. The Secretary then admitted him into the United States again. The Secretary requested that he see him in person and in writing, as in "parole". The Plaintiff then did punctually attend every hearing and meeting in person and writing upon the Secretary's request, such that the Secretary did reduce such requirements to the lowest possible level, from 2008 to 2012.

**4).** During this period, the Plaintiff became eligible for an E-1 as well as an E-2 investor visa, with significant ties to the community, via his commerce, inter alia. The Plaintiff then began adjustment of his status from the F-1 student visa to an investor visa, and then United States citizenship.

**5).** After this, the Plaintiff was arrested again on related tax matters, which is the subject of ongoing litigation. The Secretary then placed a "detainer" against the Plaintiff, which is the reason for this case at bar.

# ARGUMENT

## Point One: Missing Essential Elelments

**1).** Congress did not authorize the issuing of such a "detainer" for individuals in the Plaintiff's position and circumstances, where the statutory essential elements are deleted by the Defendants' own factual records. The Plaintiff has a record of perfect attendance and complaince with the Secretary, as he appeared in person and in writing upon the Secretary's request from 2008 to 2012. As a proximate result of the Plaintiff's perfect complaince with any and all of the Secretary's requests, the Secretary reduced the need for such meetings to the lowest possible level.

**2).** During this period, the Plaintiff became eligible for an E-1 as well as an E-2 investor visa, with significant ties to the community via his commerce, inter alia. The Plaintiff then began adjustment of his status from the F-1 student visa to an investor visa, and then subsequently United States citizenship. This meant that the Plaintiff would this time, voluntarily, go to the Secretary as and when needed on a regular basis, and the Secretary would visit his home and office as a conditional inspection for these status goals.

**3).** Whereas these Defendants' own factual records of perfect Plaintiff complaince with the Secretary described above are just the opposite of the 8 U.S.C. §1357(a)(2) statutory pre-requisite essential element for this "detainer" to be issued, since as described above there is no "likely to escape" reasonable possibility, and the Plaintiff who was admited into the country by the Secretary was in the midst of adjusting his status from student visa to investor visa then subsequently US citizen. The Court in <u>Moreno v. Napolitano</u>, 213 F. Supp. 3d 999, 1005-1008 (Northern District of Illinios 2016) explained why there must be such 8 U.S.C. § 1357(a)(2) statutory essential elements, before the Defendants can issue such a "detainer". Whereas 8 U.S.C. § 1357(a)(2) is the sole authority for issuing the "detainer" in this manner, just as the Defendants themselves already agreed and conceded,

7

see for example in <u>Moreno v. Napolitano</u>, 213 F. Supp. 3d 999, 1005 (Northern District of Illinios 2016).

**4).** The same statute also requires that one "arrested" without a warrant being issued by means of this "detainer" ; "be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." 8 U.S.C. §1357(a)(2). The Defendants' ongoing "unnecessary delay" in this statute has already been continuing for more than four years, far beyond the statutory authority, contrary to law.

**5).** In <u>Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975) the Supreme Court stated that, "just as in the criminal context, an immigration officer "must have a reasonable suspicion" to justify briefly stopping individuals to question them "about their citizenship and immigration status . . . but any further detention . . . must be based on . . . probable cause." Id. at 881-82 (emphasis added) (citing Terry, 392 U.S. at 29 (1968)); see also id. at 884 ("[T]he Fourth Amendment . . . forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens.")." This is similar to the Courts' ruling in <u>Immigration & Naturalization Serv. v. Delgado</u>, 466 U.S. 210, 216-17, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984); <u>Terry</u>, 392 U.S. at 21 (1968).

**6).** Longstanding precedent establishes that "[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975) (citing <u>Davis v. Mississippi</u>, 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969); <u>Terry v. Ohio</u>, 392 U.S. 1, 16-19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)); see also <u>Dunaway v. New York</u>, 442 U.S. 200, 216, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979) ("[D]etention for custodial interrogation -- regardless of its label -- intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest.").

**7).** The 48 hours of imprisonment that this "detainer" requests at 8 C.F.R. § 287.7(d) falls

8

well on the arrest rather that stop as" stated by the Court in United States v. Place, 462 U.S. 696, 709, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) (emphasizing that the Supreme Court had "never approved a seizure of the person for the prolonged 90-minute period involved here" based solely on reasonable suspicion, and "cannot do so on the facts presented by this case"); Manzanares v. Higdon, 575 F.3d 1135, 1148 (10th Cir. 2009) (explaining that it was unable to find any case in any circuit upholding a detention of longer than 90 minutes based on reasonable suspicion); see also Au Yi Lau v. Immigration & Naturalization Serv., 445 F.2d 217, 222, 144 U.S. App. D.C. 147 (D.C. Cir. 1971) (whether an immigration stop of "several minutes" could be justified based solely on reasonable suspicion was a "difficult[]" question, but upholding the stop as it was "minutes rather than hours").

**8).** Case law here states that "reason to believe" phrase in § 1357 "must be read in light of constitutional standards, so that 'reason to believe' must be considered the equivalent of probable cause." for example Au Yi Lau v. Immigration & Naturalization Serv., 445 F.2d 217, 222, 144 U.S. App. D.C. 147 (D.C. Cir. 1971). The phrase 'has reason to believe' [in §1357] has been equated with the constitutional requirement of probable cause."); United States v. Cantu, 519 F.2d 494, 496 (7th Cir. 1975) ("The words [in §1357] of the statute 'reason to believe' are properly taken to signify probable cause."); see also United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010) ("Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in §1357(a)(2) means Constitutionally required probable cause.").

**9).** Therefore, before the Defendants ever issued their "detainer" against the Plaintiff, it was already clearly well established that immigration stops and arrests were subject to the same Fourth Amendment requirements that apply to other stops and arrests, to wit, reasonable suspicion for a brief stop, and probable cause for any further arrest and detention. The Court in Moreno v. Napolitano, 213 F. Supp. 3d 999, 1007 (Northern District of Illinios 2016) defined probable cause, as follows: "In fact, the phase "reason to believe" in § 1357(a)(2) requires the equivalent of probable cause, see United States v. Cantu, 519 F.2d 494 at 496 (7th Cir. 1975), which in turn requires a particularized

9

inquiry. See <u>Maryland v. Pringle</u>, 540 U.S. 366, 373, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) ("'Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.'" (quoting <u>Ybarra v. Illinois</u>, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979)). . . This is reflected in the cases that have addressed the "likely to escape" language in § 1357(a)(2). See, e.g., <u>United States v. Cantu</u>, 519 F.2d 494 at 497 (7th Cir. 1975) (noting that defendants were travelling a long distance on an undetermined route); <u>Mountain High Knitting, Inc. v. Reno</u>, 51 F.3d 216, 217-18 (9th Cir. 1995) (aliens who were detained without a warrant in a factory had not been likely to escape before a warrant could be obtained); <u>Araujo v. United States</u>, 301 F. Supp. 2d 1095 at 1101 (alien who was living with his wife and had filed an application to adjust status was not likely to escape)."

**10a).** In numerous cases, for example <u>Moreno v. Napolitano</u>, 213 F. Supp. 3d 999, 1005-1006 (Northern District of Illinios 2016) and also in <u>Cervantez v. Whitfield</u>, 776 F.2d 556, 560 (5th Cir. 1985) the Defendants themselves conceded and stipulated that a detainer "may only be authorized . . . when the officer has determined that there is probable cause . . . ."

**b).** Whereas in this case the Defendants had neither reasonable suspicion nor probable cause based on the Defendants' own factual records of the Plaintiff's history of documented perfect complaince with the requests to meet the Secretary in person and or in writing, as he was adjusting his status from student visa since he was eligible for an E-1 as well as an E-2 investor visa and then US citizenship, and thus he was voluntarily visiting the Secretary as needed, and when needed. Therefore all the facts and reciprocal case law above confirms that the Defendants never had the statutorily required "likely to escape" essential element <u>Id</u>. § 1357(a)(2) (emphasis added); nor the indivdualized hearing to prove the same; in addition to the other reasons in Argument Point Two that the statutes for any "detainer" do not apply to the Plaintiff, to wit, this clearly illustrates the Defendants continuing flagrant Constitutional violations and contempt of law.

**11).** A government official's conduct violates clearly established law when, "at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every

reasonable official would . . . underst[and] that what he is doing violates that right."
Ashcroft v. al-Kidd, 563 U.S. 731, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)
(internal quotation marks omitted). There does not need to be a case exactly on point,
"but existing precedent must have placed the statutory or constitutional question beyond
debate." Id.; see also Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d
666 (2002) ("[O]fficials can still be on notice that their conduct violates established law
even in novel factual circumstances."). It was also clearly established that a law
enforcement officer is "responsible for the natural consequences of his actions." Malley v.
Briggs, 475 U.S. 335, 344 n.7, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) (quoting
Monroe v. Pape, 365 U.S. 167, 187, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)); see also id.
at 344-45 (holding that "an officer whose request for a warrant allegedly caused an
unconstitutional arrest" can be held liable for the arrest where "the warrant application is
so lacking in indicia of probable cause as to render official belief in its existence
unreasonable").

**12).** There is no ambiguity in the pertinent facts, statutes or the Constitutional pre-
requisites described above by the Courts. The Defendants have complete discretion over
the duration of Plaintiffs' unlawful "detainer" and projected detention; and therefore the
Plaintiff's claims. Inter alia, the Plaintiff brings his claims under the Administrative
Procedures Act 5 U.S.C. § 706(2)(C), as this is one of the available avenues stated in
Moreno v. Napolitano, 213 F. Supp. 3d 999, 1004 (Northern District of Illinios 2016).

As a direct result of the Defendants' violations of law , the Plaintiff continues to sufferred
ever increasing irreparable harm, for which there is no adequate remedy at law.

### Point Two: Constitutional violations

**13a).** The second reason that the "detainer" authority does not apply in the case of the
Plaintiff is due to the fact that his conviction is not final for 8 U.S.C. proceedings to

11

begin. Whereas this conviction is the only reason the Defendants issued this "detainer" since the Secretary had otherwise lawfully admitted him into the country. The Plaintiff has an actual innocence defense in his international tax case, due to newly discovered evidence that includes documents, witnesses and data which collectively delete the essential elements of his conviction. Thus he is filing for and awaiting a new trial.

**b).** The central argument in the Plaintiff's conviction revolves around his Internal Revenue Service ("IRS") form 1120 FSC, where the "FSC" is an abbreviation for "foreign sales corporation". For the sake of brevity, the Plaintiff will not burden this Honorable Court with every detail, however, the most noteworthy points about this tax return are that its instructions predictably require significant foreign/international commerce including:

**(i).** 26 C.F.R. § 1.924(c)-1 foreign management

**(ii).** 26 C.F.R. § 1.924(d)-1 foreign economic process

The corollary of this is that just as in the Plaintiff's case there are multiple foreign tax jurisdictions, and therefore multiple foreign tax authorities whose data must correlate to be congruent, compliment the United States Treasury's IRS data at 26 C.F.R §1.902-1; 26 U.S.C. §901; 26 U.S.C. §965  and 26 U.S.C. §960 et seq.

**c).** Whereas while the Plaintiff was indeed tardy in his document presentation to the IRS, there is no criminal penalty for late presentation of data, as long as the books balance as they do in this case, since the Plaintiff passed the IRS audit that occurred after the had lost his ciminal tax trial. Therefore he passed an audit on the same subject matter he was convicted of, except in this latter case of the IRS audit, additional data and explanations were available to the IRS that were not available at trial, as the trial was chronologically before the audit. Henceforth his trial and its subsequent conviction do not tell the whole story, especially now with this post-trial new exculpatory data that functionally deletes the statutory essential elements of his indictment and conviction. Therefore his conviction cannot be final for 8 U.S.C. purposes.

**14).** Henceforth the Defendants erroneously depend on the Plaintiff's criminal history, since the entire criminal history is in the process of being deleted, such that this criminal

history is now on "borrowed time".

**15).** The third reason that the "detainer" is invalid is that it was served to the Plaintiff in an unauthorized manner by civilian contractors, on the older forms that the Court determined go beyond the Defendants' statutory authority in violation of the Administrative Procedures Act at 5 U.S.C. §706(2)(C), see Moreno v. Napoliatano 213 F. Supp. 3d 999, 1003-1004 (Northern District of Illinios 2016).

**16).** The fourth and fifth reasons why the 8 U.S.C. § 1357(a)(2) essential elements for issuing the "detainer" are absent is that in the worst case scenario the Plaintiff has Federal and State Court records that make him eligible for a waiver of removal at 8 U.S.C. § 1101(a)(15)(U); 8 U.S.C.§1227(a)(7) and 8 U.S.C. §1229(b)(5). The other point is that he is currently stateless. Therefore there is no reason for him to have the essential element of "likely to escape".

**17).** Thus as cited at Argument Points One and Two above, there are at least five legal and factual reasons that both collectively and or individually delete any meaningful possibility of the 8 U.S.C. § 1357(a)(2) essential element "likely to escape". In addition, based on the Defendants' own factual records which also include those enumerated at Argument Point One and Point Two above, there was never the Constitutionally required "reasonable suspicion" ; nor "reason to believe"; nor "probable cause" to issue this "detainer". The only available Defendants' own factual records require just the opposite of issuing the "detainer" as indicated by all the pertinent case law including Brignoni-Ponce, 422 U.S. 873, 878 (1975); Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 216-17(1984); Dunaway v. New York, 442 U.S. 200, 216, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); United States v. Place, 462 U.S. 696, 709, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983);Au Yi Lau v. Immigration & Naturalization Serv., 445 F.2d 217, 222, 144 U.S. App. D.C. 147 (D.C. Cir. 1971) et al.

**18).** As the records reflect, the Defendants also refused to provide the Constitutionally required individual, particularized inquiry as this would have proven the same absence of statutory essential elements to issue the Plaintiff such a "detainer"; again based on the

13

Defendants' own factual records. Such an individual, particularized inquiry has always been required by the Courts, for example in <u>Maryland v. Pringle</u>, 540 U.S. 366, 373, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) ('"Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.'" (quoting <u>Ybarra v. Illinois</u>, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979)). . .This is reflected in the cases that have addressed the "likely to escape" language in § 1357(a)(2). See, e.g. <u>United States v. Cantu</u> 519 F.2d 494 at 497 (7th Cir. 1975) (noting that defendants were travelling a long distance on an undetermined route); <u>Mountain High Knitting, Inc. v. Reno</u>, 51 F.3d 216, 217-18 (9th Cir. 1995) (aliens who were detained without a warrant in a factory had not been likely to escape before a warrant could be obtained); <u>Araujo v. United States</u>, 301 F. Supp. 2d 1095 at 1101 (alien who was living with his wife and had filed an application to adjust status was not likely to escape)" and <u>Moreno v. Napoliatano</u> 213 F. Supp. 3d 999, 1006-1008 (Northern District of Illinios 2016).

### Point Three: Reciprocal Constitutional violations

**19a).** This Honorable Court's order for the Defendants to delete and rescind their "detainer" would have the effect of terminating the Defendants ongoing reciprocal Constitutional violations and torts. The Plaintiff is indeed housed in a law enforcement agency ("LEA") Federal Bureau of Prisons ("F.B.O.P.") that not is not only compliant with these "detainers", their regulatory and program statement is actually designed to unlawfully profit from them. The F.B.O.P. recieves the taxpayers' (including the Plaintiff's) funds from Congress at 18 U.S.C. §4007 et seq. to house, provide programs all other needs for inmates, and there is an accounting presumption that requires them to ask for the same amount of funds for all inmates.

**b).** However, they then deliberately spend fraudulently less than they reported to Congress on certain inmates with these "detainers", without ever returning the "savings" back to the taxpayer; for example 28 C.F.R. §571.21 and use of 18 U.S.C. § 4013  non-Federal

institutions "contract facilities" which require less costs per capita than that of actual F.B.O.P. institutions, as these locations have less than the bare minimum programming and inmate resources, in spite of having the same inmate trust fund dollar amounts at 28 CFR 506.1 et seq (for such inmate resources e.g. 28 C.F.R. § 544.50 and 28 C.F.R. § 544.31) and in spite having the same original total taxpayer financial support at 18 U.S.C. §4007.

**c).** The Plaintiff can go into a great deal of further detail in elucidating how this F.B.O.P. "detainer" compliance is actually a formal pathway to defraud the taxpayer, upon request, since no F.B.O.P. "savings" from these policies are ever returned to the taxpayer, as law would require, and no reduction is made in the next fiscal year budget request to Congress that reflects these lower costs for inmates with "detainers".

**20a).** The Plaintiff was denied participation in certain programs like the residential drug treatment program because of this "detainer", such that he was in custody, confinement much longer than he should have been. The available combination of such programs would have enabled the Plaintiff to now be actually out of custody, confinement. Beyond the unlawful extension of the Plaintiff's custody, confinement time is the unlawful conditions of confinement that are a proximate, or rather direct result of this "detainer"; and the subsequent reciprocal illegal series of tortious events that occurred, and are subsequently now an ongoing matter for the Justice Department's O.I.G.; the FBI Civil Rights Division and 42 U.S.C. §1983 et seq complaints.

**b).** The Court in Presier v. Rodriguez, 411 U.S. 475, 487 (1973) stated that reducing the length of time in custody is a basis the relief the Plaintiff seeks. See also Walker v Wainwright, 390 US 335, 19 L Ed 2d 1215, 88 S Ct 962 (1968); Carafas v LaVallee, 391 US 234, 239, 20 L Ed 2d 554, 88 S Ct 1556 (1968); Braden v 30th Judicial Circuit Court of Kentucky, 410 US 484, 35 L Ed 2d 443, 93 S Ct 1123 (1973). In an analogous condition to the Plaintiff, in Jones v. Cunningham, 371 U.S. 236, 241-242 (1963) the Court clarified that even in the absence of physical custody, imposition of restrictions such as the Plaintiff's came within the meaning of 28 U.S.C. §2241. In Peyton v. Rowe, 391 US 54, 66 (1968) the Court similarly stated "the statute does not deny the federal courts

15

power to fashion appropriate relief other than immediate release" as is the case here for the Plaintiff.

**21).** The Plaintiff reserves all his rights with respect to all matters, especially any personal injury respondeat superior application at the Defendants' vicarious liability; as well as replevin suit liability; as this complaint only contemplates the Defendants issuing of the "detainer", and any unlawful subsequent financial benefits.

Hitherto, as a direct result of the Defendants' "detainer" the Plaintiff suffered Court documented physical harm; continuing psychiatric harm including PTSD; continuing increasing actual documented financial harm as well as pecuniary harm, all to which there is no adequate remedy at law.

## SUMMARY

The Defendants have deliberately failed to comply with the statutory requirements to issue their "detainer", including 8 U.S.C. § 1357(a)(2) and refused to provide him an individualized hearing as reasons set forth in Argument Point One and Point Two. The Defendants further caused harm to the Plaintiff as explained in Argument Point Three. There is no genuine dispute as to any material fact or related law, such that summary judgement in favor of the Plaintiff is warranted as a matter of law.

The Plaintiff has exhausted his administrative remedy, including the enclosed unanswered tort claim at Exhibit A, for 42 USC §1997e(a) purposes, such that this Honorable Court finds jurisdiction over all the matters set forth, including any replevin suit interpretation of this pleading.

The Plaintiff will furnish the Court documentation of the harm he has suffered upon request.

As a direct result of the Defendants' "detainer" the Plaintiff suffered Court documented physical harm; continuing psychiatric harm including PTSD; continuing increasing actual documented financial harm as well as pecuniary harm, all to which there is no adequate remedy at law.

17

## RELIEF SOUGHT

The Plaintiff has clearly shown that he has suffered Court documented physical harm; continuing psychiatric harm including PTSD; continuing increasing actual documented financial harm as well as pecuniary harm, all to which there is no adequate remedy at law. The Plaintiff therefore humbly requests that this Honorable Court immediately grant him as follows:

**a).** This Honorable Court order that the Defendants immediately rescind and delete their "detainer".

**b).** Payment of the enclosed unaswered tort claim amount. The Plaintiff can itemize the basis for this payment upon request. Whereas the Defendants have deliberatly failed to respond to this tort claim as required by the Federal Tort Claims Act 28 USCS §1346 et seq., such that they are subject to default judgement, as a matter of law.

The Plaintiff reserves all his rights with respect to all matters, especially any personal injury respondeat superior application for the Defendants vicarious liability; as well as replevin suit liability; as this tort claim only contemplates the Defendants issuing of the "detainer", and any unlawful subsequent financial benefits.

**c).** The Plaintiff also humbly requests any other relief that this Honorable Court deems fit.

Wherefore, for the foregoing reasons, the Plaintiff humbly requests this Honorable Court to grant this motion with all speed.

Respectfully submitted,

MAKUSHA GOZO                                    January 12, 2020
28 U.S.C. §1746                                  Date

F.R.A.P. Rule 4, mailbox rule

18

# EXHIBIT A

**(Unanswered correspondence to the Defendants)**

Makusha Gozo
33½ Pembroke Rd
Danbury, Ct 06811

January, 31 2018

The Secretary
Department of Homeland Security
245 Murray Lane S.W.
Washington, D.C. 20528

RE: 8 U.S.C. §1357(a)(2) violation.

Dear Hon. Secretary Nielson Esq.,

My best regards. I write to reiterate my previous correspondence to
you, regarding the unlawful "detainer" that your office erroneously
lodged against me. This was done without the statutorily required
individualized determination.

As you should be aware, 8 U.S.C. §1357(a)(2) is the sole authority to
issue such a "detainer". Whereas I do not fit the legally required
statutory essential elements of "likely to flee" in order to issue
this "detainer". On the contrary, I have a perfect record of punctual
attendance for all meetings and hearings that you requested from me in
person and in writing from 2008 to 2012. Therefore your own records
show that this "detainer" was issued in violation of the Constitution.

The only reason this "detainer" was issued was because of an
international tax conviction, which is not final for 8 U.S.C.
purposes, since I have proven that I am now eligible for a new trial,
based on new data, and new witnesses that delete the essential
elements of the underlying conviction, and criminal history that
caused the "detainer" to be issued in the first place. I was otherwise
lawfully admitted into the country.

The state and federal tax records show that I have corporations and
real estate which otherwise make me eligible for certain waivers, in
the worst case scenario, and I am also stateless.

There have been a myriad of reciprocal torts that have occurred as a
proximate result of this "detainer", therefore please rescind and
delete it at your very earliest convenience.

Please feel free to contact me if I may further clarify. I otherwise
earnestly look forward to your prompt response.

Very truly,
Makusha Gozo
28 U.S.C. §1746

Makusha Gozo
P.O. Box 1000
Loretto, Pa 15940

November 1, 2018

The Secretary
The Department of Homeland Security
245 Murray Lane S.W.
Washington D.C. 20528

RE: Unlawful, tortious "detainer".

Dear Hon. Secretary Nielson Esq.,

My best regards. Please note that this is my second consecutive
unanswered correspondence to you regarding the "detainer" that was
unlawfully lodged against me via your office. This detainer was served
to me by a civilian contractor, contrary to law, and I was not given the
Statutorily and Constitutionally required individualized determination
to see if I am indeed a candidate for such a "detainer".

Whereas 8 U.S.C. §1357(a)(2) is the sole authority to issue such a
detainer. Whereas I do not fit the essential elements' requirements for
such a "detainer" because I have a perfect record of attendance and
compliance with your Department from 2008 to 2012. In addition, the only
reason you elected to lodge the "detainer" was because of an
international tax case which is not final since there is new data which
warrants a new trial. There are also state and federal Court records
which in the worst case scenario would make me eligible for certain
waivers, since I own real estate, corporations and other United States
assets.

Therefore the "likely to flee" pre-requisite required by the sole
authority statute to issue such a "detainer", 8 U.S.C. §1357(a)(2) does
not exist. Henceforth in this case the "detainer" is lodged against me
in violation of the Constitution, and a myriad of reciprocal torts have
since occured, such that you must rescind and delete this "detainer"
immediately.

Please feel free to contact me if I may further clarify. I otherwise
look forward to your prompt response.

Very truly
Makusha Gozo
28 USC §1746

1

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | **FORM APPROVED OMB NO. 1105-0008** |
|---|---|---|

| 1. Submit to Appropriate Federal Agency:<br><br>The Secretary<br>Department of Homeland Security<br>245 Murray Lane<br>Washington, D.C. 20528 | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.<br><br>Makusha Gozo<br>772 St Joesph St<br>Loretto, Pa 15940 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>05/15/72 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>November 1, 2018 | 7. TIME (A.M. OR P.M.)<br>11:00 |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary). The Secretary and her staff in D.C. lodged an unlawful "detainer" against me. The sole authority for such a "detainer" is 8 USC §1357(a)(2); with the esential element "likely to flee". Whereas the Secretary's own records for me are just the OPPOSITE, since I punctually attended EVERY appointment and hearing requested from 2008 to 2012. The ONLY reference for issing the "detainer" is an international tax case that is not final for 8 USC purposes. As a proximate result of the unlawful "detainer" I have suffered physical, psychiatric, actual and percuniary documented financial harm

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side). Illegally denied individualized determination. Constitutional Due Process before a "detainer" was lodged, vis-a-vis the Secretary's records which show that this "detainer" cannot be applied in my case as a matter of law at 8 USC §1357(a)(2).

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT. As a result of this unlawful "detainer" I have suffered well documented Court recorded physical, psychiatric, actual and pecuniary financial harm for which there is no adequate remedy at law.

| 11. | | WITNESSES | |
|---|---|---|---|
| | NAME | | ADDRESS (Number, Street, City, State, and Zip Code) |
| | Manager Fannin. | | 772 St Joesph St, Loretto, Pa 15940 |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>10,000,000 | 12b. PERSONAL INJURY<br>6,777,777 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights).<br>16,777,777 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE<br>12/01/18 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

Not Applicable

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

NOt Applicable

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in Item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

## CERTIFICATE OF SERVICE

The Plaintiff hereby certifies that on this 12th Day of January 2020, a copy of this motion was sent to the Defendants counsel via First Class US Postal mail.

Respectfully submitted,

MAKUSHA GOZO                                    January 12, 2020
28 U.S.C. . §1746                               Date
F.R.A.P. Rule 4, Mailbox rule